11-CV-01730-PET

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

INTERSTATE FIRE & CASUALTY COMPANY,

    Plaintiff,

v.

ANTHONY DICKERSON, *et al.*,

    Defendants.

Case No. C11-1730RSL

ORDER REGARDING CROSS-MOTIONS FOR SUMMARY JUDGMENT

This matter comes before the Court on the parties' cross-motions for summary judgment. Dkt. # 21 and Dkt. # 28. Having reviewed the memoranda, declarations, and exhibits submitted by the parties[1] and having heard the arguments of counsel, the Court finds as follows:

### BACKGROUND

In February 2008, J.D. was born more than three months early. She spent the first five months of her life in the hospital. Because she had difficulties breathing, a tracheostomy tube was placed in her windpipe. When J.D. left the hospital, her parents employed Alliance Nursing, Inc., to provide home health care services, including daily cleaning of the tracheostomy

---

[1] The Court has not considered paragraph 8 of the Declaration of Editha D. Aguda (Dkt. # 29) or the portions of plaintiff's motion for summary judgment that rely thereon. Nor has the Court considered Dr. Shulkin's opinion testimony regarding the meaning of "incident."

ORDER REGARDING CROSS-
MOTIONS FOR SUMMARY JUDGMENT

tube and its implant site.

On the morning of July 18, 2008, Nurse Wencek, an Alliance employee, failed to follow applicable standards of care related to routine stoma care and emergency airway management, causing bodily injury to J.D and emotional distress to her parents. Dkt. # 21, Ex. 1. In particular, Nurse Wencek negligently dislodged the tracheostomy tube from J.D.'s windpipe, was unable to re-insert the tube, failed to properly oxygenate the baby, and ceased resuscitative efforts prior to the arrival of the emergency aid car. J.D. suffered an hypoxic event, and her parents were prepared to show at trial that the lack of oxygen caused various physical and cognitive disabilities.[2] Interstate seeks a determination that any or all of the above-described acts constitute a single "incident" as defined by Alliance's insurance policy. The Dickersons oppose Interstate's motion, arguing that each negligent act or omission is a separate "incident" under the policy. The Dickersons also filed their own motion for summary judgment seeking a determination that there were three or more "incidents" under the policy and awarding the family an additional $2 million pursuant to the parties' settlement agreement.

## DISCUSSION

> In Washington, insurance policies are construed as contracts. An insurance policy is construed as a whole, with the policy being given a fair, reasonable, and sensible construction as would be given to the contract by the average person purchasing insurance. If the language is clear and unambiguous, the court must enforce it as written and may not modify it or create ambiguity where none exists. If the clause is ambiguous, however, extrinsic evidence of intent of the parties may be relied upon to resolve the ambiguity. Any ambiguities remaining after examining

---

[2] The Dickersons sued Alliance and Nurse Wencek for medical malpractice in state court. The Honorable Steven J. Mura found that Nurse Wencek's dislodging of the tracheostomy tube and her failure to follow the emergency airway management protocols constituted negligence as a matter of law. The Dickersons' other allegations of negligence and the nature and extent of J.D.'s damages were left for trial. The parties settled the underlying litigation with the understanding that Interstate Fire and Casualty Company, Alliance's insurer, would initiate this declaratory judgment action to determine how many "incidents" occurred on July 18, 2008. Decl. of Douglas R. Shepard (Dkt. # 26), Ex. D at 3.

ORDER REGARDING CROSS-
MOTIONS FOR SUMMARY JUDGMENT             -2-

applicable extrinsic evidence are resolved against the drafter-insurer and in favor of the insured. A clause is ambiguous when, on its face, it is fairly susceptible to two different interpretations, both of which are reasonable.

Panorama Village Condominium v. Allstate Ins. Co., 144 Wn.2d 130, 137 (2001) (quoting Weyerhaeuser Co. v. Commercial Union Ins. Co., 142 Wn.2d 654, 665-66 (2000)) (internal quotations omitted). Interstate agreed to pay on behalf of Alliance up to $1 million per "incident," but no more than an aggregated total of $3 million. Decl. of Editha D. Aguda (Dkt. # 29), Ex. A at 16. "Incident" is defined as "any act or omission in the furnishing of professional health care services to a patient or client including the furnishing of food, beverages, medications, or appliances in connection with such services, and the postmortem handling of human bodies." Id. at 6.

Interstate argues that an "incident" as defined in the policy necessarily includes all similar or related acts and omissions, such that the entire course of Nurse Wencek's conduct on July 18, 2008, constitutes a single "incident" as that term is used in the policy. This argument is based on a prior judicial interpretation of the word "any" and abstract considerations regarding the impact a different interpretation would have on the administration of insurance in the medical context. The Dickersons, on the other hand, argue that the words "act" and "omission" in the definition are singular, and that any single act or failure to act that caused injury to J.D. or her parents constitutes an actionable "incident" under the policy definition.

The Court is willing to assume, for purposes of this motion, that Interstate's interpretation of "any act or omission in the furnishing of professional health care services" to mean "all related acts or omissions" is reasonable. There being two fair and reasonable interpretations of "incident," the Court finds that the policy definition is ambiguous. Resort to extrinsic evidence resolves the ambiguity in the Dickersons' favor. The form of contract used by Interstate originally included a definition of "incident" which specifically provided that "all related acts or omissions shall be considered one 'Incident' and be subject to the same limit of

ORDER REGARDING CROSS-
MOTIONS FOR SUMMARY JUDGMENT            -3-

liability." That is, of course, the very interpretation that Interstate has proffered in this litigation. The "all related acts or omissions" provision was deleted by endorsement, however, and Interstate offers no justification in law or in fact for reading a term that was explicitly rejected by the parties back into their contract. Where negotiations regarding the terms of an insurance policy occur, the parties' objective manifestations of intent will generally govern the interpretation of ambiguous terms. See Lynott v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 123 Wn.2d 678, 684 (1994). Because language that would have made all related acts a single "incident" under the policy was expressly deleted by the parties and because any remaining ambiguity must be resolved against the insurer and in favor of coverage (Panorama Village, 144 Wn.2d at 137), the Court finds that distinct and separate acts or omissions that cause injury, even if causally related to each other, are separate "incidents" under the policy definition.[3]

       If this were a normal policy interpretation exercise, the Court would go on to evaluate the effect of its interpretation on Interstate's coverage obligations, in particular whether the existence of multiple "incidents" triggers an obligation to pay multiple policy limits. There are at least two contract provisions that suggest that Interstate's liability in these circumstances would be limited to $1 million, regardless of the number of "incidents." The "Limit of Liability"

---

[3] Interstate's policy arguments and analogies are unpersuasive. The Court's task is to enforce the unambiguous terms of the agreement and/or to discern the intent of the parties if an ambiguity exists, not to figure out what interpretation makes economic sense for the insurer. Contrary to Dr. Shulkin's invitation, the Court is not free to rewrite the policy or superimpose deleted provisions to ensure that Interstate faces only a single claim for all related events. Plaintiff could have (and in some cases did) utilize a definition of "incident" which accomplished that task. The Court will not depart from the intent of the parties simply to save plaintiff from the effects of the chosen endorsement.
    Interstate's grocery store analogy misses the mark. The business invitee of the analogy suffers a single injurious event – a fall – precipitated by multiple contributing causes. In J.D.'s case, each act or omission caused a separate or additional quantum of harm to the Dickersons. Each breach of duty here is associated with its own loss or portion of the loss. Plaintiff's citation to Truck Ins. Exch. v. Rohde, 49 Wn.2d 465, 467 (1956), is similarly unpersuasive in that the insured in that case engaged in one negligent act causing multiple injuries.

ORDER REGARDING CROSS-
MOTIONS FOR SUMMARY JUDGMENT           -4-

section of the contract and part of the "Incident Redefined Endorsement" specifically state that all claims arising out of the same or related "incident" shall be subject to a single limit of liability. Decl. of Editha D. Aguda (Dkt. # 29), Ex. A at 4 and 17. Left to its own devices, the Court would therefore conclude that, despite the fact that there are multiple "incidents" under the policy, Interstate's liability is capped at $1 million.

This is not a normal policy interpretation case, however. The parties appear to have forestalled consideration of any issue other than how many "incidents" occurred on July 18, 2008. In the "Comprehensive Release, Settlement and Assignment Agreement," Interstate agreed to file this declaratory judgment action seeking "a judicial declaration as to the number of 'incidents,' as that term is used in the Policy, that arose out of the Health Care Services provided to [J.D.] on July 18, 2008." Decl. of Douglas R. Shepard (Dkt. # 26), Ex. D at 3. Interstate waived "any defense to coverage that is not directly related to the court's determination of the number of 'incidents' that arose out of the Health Care Services provided to [J.D.] on July 18, 2008." Id. Once the Court determines the number of "incidents" under the policy, the settlement agreement specifies the amount, if any, that is due the Dickersons. Id., Ex. D at 3-4.

The Dickersons seek a determination that there were three "incidents" as that term is used in the insurance policy, namely the dislodging of the tracheostomy tube from J.D.'s windpipe, the failure to properly oxygenate the baby after Nurse Wencek was unable to reinsert the tube, and the cessation of CPR prior to the arrival of the emergency aid car. The state court found as a matter of law that Nurse Wencek had dislodged the tracheostomy tube and failed to properly oxygenate J.D. Each constitutes an "act or omission in the furnishing of professional health care services to a patient or client" and falls within the policy's definition of "incident." Thus, there are at least two "incidents" as defined by the policy. The Dickersons have provided unrebutted evidence of the third "act or omission" as well: the paramedic who responded to the 911 call states that Nurse Wencek was not administering CPR or utilizing an oxygen mask when

ORDER REGARDING CROSS-
MOTIONS FOR SUMMARY JUDGMENT           -5-

he arrived. Interstate does not contest this point. Instead, it argues that the medical industry would view what happened on July 18, 2008, as a single "incident" and that there are factual issues regarding the amount of damage, if any, suffered as a result of each "incident." The Court has already decided the first issue in the Dickersons' favor. The second was resolved through the parties' settlement agreement.

For all of the foregoing reasons, the Court finds that distinct and separate acts or omissions, even if causally related to each other, are separate "incidents" under Interstate's policy with Alliance. Interstate's motion for summary judgment (Dkt. # 28) is therefore DENIED. There being no genuine issue of material fact regarding the existence of the three acts or omissions alleged and at least some resulting damage, the Court GRANTS the Dickersons' motion for summary judgment (Dkt. # 21). Because there were three "incidents" as that term is used in the policy, Interstate is contractually obligated to pay the Dickersons an additional two million dollars ($2,000,000). The Clerk of Court is directed to enter judgment in favor of the Dickersons and against Interstate in that amount, plus pre-judgment interest.

DATED this 31st day of August, 2012.

/s/ Robert S. Lasnik

Robert S. Lasnik
United States District Judge